United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 12, 2004**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 3, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30437

_____

UNITED STATES OF AMERICA

                                    Plaintiff - Appellee

        v.

FRANCISCO D PINEIRO, also known as Frank Pineiro

                                    Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before KING, Chief Judge, and BARKSDALE and PICKERING, Circuit
Judges.

KING, Chief Judge:

In this case we are called upon to consider the impact on
the federal Sentencing Guidelines of the Supreme Court's recent
opinion in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (June 24,
2004).  Defendant Francisco D. Pineiro was convicted in the
district court of violating the federal controlled-substances
laws.  During sentencing, the district judge followed then-
uncontroversial pre-<u>Blakely</u> procedures and made various factual

findings that determined Pineiro's sentencing range under the Guidelines.

This court assuredly will not be the final arbiter of whether <u>Blakely</u> applies to the federal Guidelines, but the unremitting press of sentencing appeals requires us to produce a decision. We have undertaken to discern, consistent with our role as an intermediate appellate court, what remains the governing law in the wake of <u>Blakely</u>. Having considered the <u>Blakely</u> decision, prior Supreme Court cases, and our own circuit precedent, we hold that <u>Blakely</u> does not extend to the federal Guidelines and that Pineiro's sentence did not violate the Constitution. Accordingly, the defendant's sentence is affirmed.

## I. BACKGROUND

A three-count indictment charged Pineiro with committing federal drug offenses. Count one charged Pineiro with carrying on a marijuana- and cocaine-distribution conspiracy, involving at least 100 kilograms of marijuana and 50 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] Count two charged him with possessing and aiding and abetting possession with intent to distribute approximately three-fourths of a pound of

---

[1] Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Section 846 makes it a crime to "attempt[] or conspire[] to commit any offense defined in this subchapter."

2

marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[2]  Count three charged him with possessing and aiding and abetting possession with intent to distribute approximately twenty-one pounds of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Pineiro pleaded not guilty, and his case proceeded to trial. On the first count of the indictment, the verdict form required the jury to indicate the amounts (if any) of marijuana and cocaine that the jury found that Pineiro had conspired to distribute.  As to marijuana, the jury could choose whether Pineiro was guilty of conspiring to distribute "100 kilograms or more," "50 to 100 kilograms," "less than 50 kilograms," or whether he was not guilty.  Similarly, for cocaine, the jury could choose from "50 grams or more," "50 grams or less," or not guilty.[3]  The jury found Pineiro guilty of conspiring to distribute the lowest amounts listed: "less than 50 kilograms" of marijuana and "50 grams or less" of cocaine.  The jury also found Pineiro guilty as charged on counts two and three.

Based on the drug quantities found by the jury, the maximum sentences set forth in the United States Code were 20 years for

---

[2]    Section 2 is the United States Code's general prohibition on aiding and abetting violations of the federal criminal statutes.

[3]    Some of the amounts on the verdict form do not line up with the gradations in 21 U.S.C. § 841(b).  At oral argument we inquired as to why the form was confected in this way, but neither side could provide an explanation.

count one, see 21 U.S.C. § 841(b)(1)(C) (establishing maximum sentences for any amount of cocaine less than 500 grams), and 5 years for counts two and three, see id. § 841(b)(1)(D) (establishing maximum sentences for less than 50 kilograms of marijuana).

In accordance with the usual practice, a probation officer prepared a Presentence Investigation Report (PSR) to assist the judge in determining an appropriate sentence within the statutory range. The PSR used the 2002 version of the United States Sentencing Commission's Guidelines Manual. The PSR held Pineiro responsible for amounts of drugs much greater than the amounts found by the jury: based on statements from several unnamed cooperating witnesses, the PSR indicated that Pineiro was responsible for 453.6 kilograms of marijuana and 1,048.95 grams of cocaine in connection with the conspiracy charge. Based on this quantity of illegal drugs, the PSR concluded that the base offense level for the first count was 28. See U.S.S.G. § 2D1.1(c) (Drug Quantity Table). The PSR further recommended that Pineiro also receive a four-level sentence enhancement under U.S.S.G. § 3B1.1(a) for being "an organizer or leader" of the conspiracy. The resulting total offense level of 32, when combined with Pineiro's criminal history category of I (he had no prior convictions), yielded a Guidelines sentencing range of 121 to 151 months.

4

Pineiro objected to the PSR on several grounds, two of which are relevant to this appeal. First, he objected to the base offense level of 28, complaining that the jury's findings with respect to drug quantities required a lower base offense level. His objection argued that using the larger quantities would conflict with Apprendi v. New Jersey, 530 U.S. 466 (2000), and would disrespect "the sanctity of the jury proceedings." Second, he objected to the four-level "organizer or leader" enhancement on the ground that the evidence at trial did not support such a factual finding, but he did not raise the constitutional claim regarding this enhancement.

The district court overruled Pineiro's objections and sentenced him to 121 months on the first count, 60 months on the second count, and 60 months on the third count, with the sentences to run concurrently.

Piniero then appealed his sentence. In his initial brief, he conceded that his Apprendi-based challenge to the district court's drug-quantity calculation was foreclosed by circuit precedent, but he nonetheless raised the issue to preserve it for further review. After briefing was completed but before oral argument, the Supreme Court decided Blakely, and we ordered supplemental briefing to assess its impact. Pineiro contends that Blakely applies to the federal Guidelines and that his

sentence must be vacated and the case remanded for resentencing.[4]
The government contends that <u>Blakely</u> does not apply.

## II. ANALYSIS

### A.  Impact of <u>Blakely</u>

Had today's case been decided a month ago, Pineiro's
<u>Apprendi</u> challenge would not have been a difficult one to
resolve.  Although post-verdict judicial findings of fact
increased Pineiro's sentence substantially, the resulting
sentence does not exceed the statutory maximum set forth in the
United States Code.  We therefore would simply have applied long-
entrenched circuit precedent that holds <u>Apprendi</u> inapplicable to
such circumstances.  <u>See, e.g.</u>, <u>United States v. Floyd</u>, 343 F.3d
363, 372 (5th Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 2190 (2004);
<u>United States v. McIntosh</u>, 280 F.3d 479, 484 (5th Cir. 2002);
<u>United States v. Keith</u>, 230 F.3d 784, 787 (5th Cir. 2000), <u>cert.
denied</u>, 531 U.S. 1182 (2001); <u>Doggett</u>, 230 F.3d at 165-66.  This
line of authority embraces the view that judge-made factual

---

[4]     Pineiro argues, and we agree, that his <u>Apprendi</u>-based
objection to the PSR's drug-quantity calculations was sufficient
to preserve for <u>de novo</u> appellate review the constitutional
challenge to his sentence.  <u>See</u> <u>United States v. Doggett</u>, 230
F.3d 160, 162-63, 165 (5th Cir. 2000) (holding that an objection
to a PSR based on <u>Jones v. United States</u>, 526 U.S. 227 (1999),
preserved an <u>Apprendi</u> challenge to the defendant's sentence).  As
to the sentence enhancement for being a leader or organizer,
Pineiro does not claim that his fact-based objection to the PSR
was sufficient to preserve the constitutional issue; he claims,
however, that the district court committed reversible plain error
in light of <u>Blakely</u>.

findings that determine Guidelines ranges below the congressionally enacted maximum sentence are constitutionally equivalent to the sentencing judge's historic discretion to choose a sentence within a legislatively authorized range. But because of the Supreme Court's recent decision in Blakely, we are now required to consider the viability of that line of cases, and indeed the continued force of certain prior Supreme Court decisions as well. Committed as we are to principles of stare decisis and orderliness, we do not depart from settled law in the absence of an on-point en banc or Supreme Court holding. See, e.g., Robinson v. Parsons, 560 F.2d 720, 721 n.2 (5th Cir. 1977).

Blakely involved the sentencing regime of the State of Washington. The Washington criminal code establishes maximum sentences for felonies according to whether the crime is a class A, B, or C felony. Also codified as part of the state statutes, however, is the Sentencing Reform Act, which establishes presumptive sentencing ranges based on the "seriousness level" of the offense and the offender's criminal history. The seriousness level of the offense is for the most part a function of the statute of conviction. The Act permits the judge to impose a sentence above the presumptive range when there exist "substantial and compelling reasons justifying an exceptional sentence." The Act sets out a list of such factors, but the list is only illustrative, not exhaustive. A factor is a permissible reason for imposing an exceptional sentence only if it is not

7

already taken into account in the calculation of the presumptive range.

Blakely pleaded guilty to second-degree kidnaping with a firearm.  As a class B felony, it was punishable under the state criminal code by a sentence of up to 10 years.  The Sentencing Reform Act, though, specified a presumptive range of only 49 to 53 months for this particular crime.  At sentencing, the judge imposed an exceptional sentence of 90 months on the ground that Blakely had acted with "deliberate cruelty," a statutorily enumerated ground for upward departure.  The defendant objected to the increase, but the trial judge adhered to his decision after conducting a three-day bench hearing.

In reaching its decision that Blakely's sentence was imposed in violation of the Constitution, the Supreme Court took as its primary precedent its decision in Apprendi v. New Jersey. Apprendi involved two New Jersey statutes, one that authorized a 10-year term for the second-degree offense of unlawful possession of a firearm and a second statute that provided for a term of 10 to 20 years if the trial judge found that the defendant acted with the intent to intimidate the victim based on his race or other protected statuses.  530 U.S. at 468-69.  The Apprendi Court concluded that the factual findings supporting the enhanced sentence had to be made by the jury, not the judge.  "Other than the fact of a prior conviction," the Court held, "any fact that increases the penalty for a crime beyond the prescribed statutory

8

<u>maximum</u> must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490 (emphasis added). Two years later, in <u>Ring v. Arizona</u>, 536 U.S. 584, 597, 604-09 (2002), the Court applied <u>Apprendi</u> to an Arizona capital-sentencing statute that permitted imposition of the death penalty when a judge found one of ten aggravating factors. As the Court described them in <u>Blakely</u>, the <u>Apprendi</u> and <u>Ring</u> decisions both held "that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding." <u>Blakely</u>, slip op. at 6-7.

The aspect of <u>Blakely</u> that threatens the federal Guidelines is the Court's reasoning regarding the relevant "statutory maximum" for <u>Apprendi</u> purposes. The State argued that the relevant maximum was the 10-year maximum that the criminal code specified for class B felonies. Since the judge's exceptional 90-month sentence was still within the 10-year maximum, the State contended that there was no <u>Apprendi</u> violation. The Court pointedly rejected that argument, instead concluding that the relevant maximum was 53 months, the top of the presumptive sentencing range under Washington's Sentencing Reform Act:

> Our precedents make clear . . . that the "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may

9

> impose <u>without</u> any additional findings.  When a judge
> inflicts punishment that the jury's verdict alone does
> not allow, the jury has not found all the facts "which
> the law makes essential to the punishment," and the judge
> exceeds his proper authority.

<u>Id.</u> at 7 (citations omitted).  The Court then pointed out that the trial judge could not have imposed the 90-month sentence based solely on the facts admitted in the guilty plea.  <u>Id.</u> at 7-8.  To support that sentence, the judge had to find the aggravating factor.  The Court explained:

> The "maximum sentence" is no more 10 years here than it
> was 20 years in <u>Apprendi</u> (because that is what the judge
> could have imposed upon finding a hate crime) or death in
> <u>Ring</u> (because that is what the judge could have imposed
> upon finding an aggravator).

<u>Id.</u> at 8.

The Court acknowledged, and did not overrule, prior cases upholding sentencing schemes that impose a mandatory <u>minimum</u> sentence based on judge-made factual findings.  <u>See</u> <u>Harris v. United States</u>, 536 U.S. 545 (2002); <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986).  The Court also reaffirmed the constitutionality of indeterminate-sentencing regimes in which a sentencing judge may, but need not, rely on factual determinations outside of the verdict in fixing a sentence within a broad statutory range.  <u>See</u> <u>Williams v. New York</u>, 337 U.S. 241 (1949).  But the Court distinguished mandatory-minimum and indeterminate-sentencing systems from the Washington system on the ground that they did not involve sentences "greater than what state law authorized on the basis of the verdict alone."  <u>Blakely</u>, slip op. at 8.

10

Justice Scalia's opinion for the <u>Blakely</u> majority noted that the federal Guidelines were not before the Court, and the Court expressly declined to express any opinion as to them. <u>Id.</u> at 9 n.9. That disclaimer does not by itself mean that <u>Blakely</u> carries no import for the federal Guidelines, for the binding force of a Supreme Court decision is ordinarily not limited to the particular set of facts that produces it. Indeed, the dissenting Justices certainly thought that the Court's reasoning might foretell the end of the federal Guidelines. <u>See</u> <u>id.</u> at 12-13 (O'Connor, J., dissenting); <u>id.</u> at 19-21 (Breyer, J., dissenting). That prophecy has already been realized in several courts across the country, <u>see, e.g.</u>, <u>United States v. Booker</u>, No. 03-4225 (7th Cir. July 9, 2004); <u>United States v. Croxford</u>, No. 2:02-CR-00302PGC, 2004 WL 1521560 (D. Utah July 7, 2004), though those courts have reached no consensus on how sentencing is to proceed after the overthrow of the old regime.

In the wake of <u>Blakely</u>, the constitutional fate of the federal Guidelines depends on whether the Guidelines effectively operate as statutes that define different offenses with different maximum sentences; expressed in different terms, the question is whether a Guidelines sentencing range unenhanced by judicial findings sets a "maximum sentence" for purposes of <u>Apprendi</u>. If that is how the Guidelines operate, then Pineiro's sentence is unconstitutional because the verdict did not authorize the sentence; instead, the judge's findings effectively determined

11

the offense of which Pineiro was convicted. The competing vision of how the Guidelines operate--the position that the government urges--pictures the Guidelines as a tool for channeling the sentencing court's historic discretion to choose a sentence within the broad range established by the crime's statutory (i.e., United States Code) minimum and maximum. On this second view, a sentencing judge's factual findings under the Guidelines do not raise the "maximum sentence" to which the defendant is exposed, the infirmity that the Court identified in Apprendi and Ring; the only constitutionally relevant "maximum sentence," according to this second view, is the 20-year sentence authorized in § 841 of Title 21 of the United States Code. The constitutional implication of this second view is that judge-made factual findings that determine Guidelines ranges within the statutory maximum are no more problematic than the sentencing judge's historic discretion to choose a sentence within a legislatively authorized range. As explained more fully below, both the Supreme Court and this court have for some time embraced the second vision of how the Guidelines operate.

Undeniably, Blakely strikes hard at the prevailing understanding of the Guidelines. The Guidelines, unlike Washington's Sentencing Reform Act, are not statutes, but they are nonetheless binding on sentencing courts. See Stinson v. United States, 508 U.S. 36, 42, 44-45 (1993). Federal statutes direct the district judge to follow the Guidelines. See 18

12

U.S.C. § 3553(b) (stating that the sentencing court "shall impose a sentence of the kind, and within the range," established by an applicable Guideline). Like the judge who disregards the Washington sentencing rules, a federal judge who disregards the Guidelines does so on pain of reversal. The Guidelines Manual is not a catalog of mere suggestions.

But Blakely, which did not actually involve the federal Guidelines, is not the only case that we must consider. While we are bound to follow Blakely, as an inferior court we are also bound to examine the Supreme Court's prior pronouncements and guidance regarding the nature of the Guidelines. That examination reveals that a number of the Court's prior cases, including cases that reject various constitutional challenges to the Guidelines, are founded on the proposition that there are constitutionally meaningful differences between Guidelines ranges and United States Code maxima. These cases paint a picture of how the Guidelines operate that clashes with the one that Pineiro would have us adopt.

In canvassing those prior rulings, we look first to Mistretta v. United States, 488 U.S. 361 (1989). Decided shortly after the promulgation of the Guidelines, Mistretta upheld them against constitutional arguments that Congress had delegated excessive authority to the Sentencing Commission and that the Commission was constituted in violation of the separation of powers. Id. at 370-71, 380. The opinion did not discuss the due

13

process or Sixth Amendment considerations involved in <u>Apprendi</u> and <u>Blakely</u>, but the case is not without meaning for us.  In the course of the Court's rejection of the argument that the placement of the Sentencing Commission in the judicial branch violated the separation of powers by placing legislative policymaking authority in the judiciary, <u>see</u> <u>id.</u> at 383, 385, the Court described the Guidelines as follows:

> [The Guidelines] do not bind or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime.  <u>They do no more than fetter the discretion of sentencing judges to do what they have done for generations--impose sentences within the broad limits established by Congress.</u>

<u>Id.</u> at 396 (emphasis added).  Thus, part of the reason that the Court was able to reject the separation-of-powers challenge was its conclusion that the Guidelines do not set maximum sentences in the same way as do congressional enactments.

Later Supreme Court cases have consistently embraced and relied on the distinction between Guidelines ranges and maximum sentences in rejecting various challenges to the Guidelines.  One example of this practice is <u>Edwards v. United States</u>, 523 U.S. 511 (1998).  The defendants in <u>Edwards</u> were charged with conspiring to distribute cocaine powder and crack.  The jury convicted them, but the instructions stated that the government only had to prove a conspiracy involving powder <u>or</u> crack.  In determining the sentence, the judge held the defendants responsible for certain amounts of both forms of the drug.  The

14

defendants challenged their sentences on the ground that the sentencing judge was required by the Guidelines, the statutes, and the Constitution to consider only powder, which is punished less harshly than crack.  The unanimous Supreme Court disagreed. The Court's opinion was mainly concerned with how the Guidelines' "relevant conduct" rules operate: Since the Guidelines instruct the judge to examine relevant conduct as well as conduct underlying the conviction, the crack could be considered even if the verdict were limited to powder.  Id. at 513-14.  But the Court also turned away a potential constitutional argument, observing that the defendants' contentions might have been more persuasive had the defendants' sentences exceeded the statutory maxima set forth in the United States Code.  Id. at 515.  This remark is only suggestive in itself--the Court did not really explain what the potential constitutional argument would be[5]--but it gathers meaning by virtue of the fact that the Court cited this passage from Edwards at the close of Apprendi:

> The Guidelines are, of course, not before the Court.  We therefore express no view on the subject beyond what this Court has already held.  See, e.g., Edwards v. United States, 523 U.S. 511, 515 (1998) (opinion of BREYER, J., for a unanimous court) (noting that "[o]f course, petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy.  That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines. [United States

---

[5]     The defendants' briefs show that they raised Sixth Amendment and due process considerations.

15

> Sentencing Commission, Guidelines Manual § 5G1.1 (Nov.
> 1994)]").

*Apprendi*, 530 U.S. at 497 n.21.  Our precedents have accordingly

read *Apprendi* as intending to leave undisturbed the rule,

described in *Edwards*, that the sentencing judge may properly find

facts that move the Guidelines range within the statutory

maximum.  See *United States v. McWaine*, 290 F.3d 269, 274 (5th

Cir.), *cert. denied*, 537 U.S. 921 (2002); *Doggett*, 230 F.3d at

166; *see also* *United States v. Kinter*, 235 F.3d 192, 201-02 (4th

Cir. 2000) (similarly harmonizing *Apprendi* and *Edwards*).  Indeed,

the Supreme Court's own post-*Apprendi* cases have continued to

treat the United States Code maximum as the relevant

consideration for purposes of *Apprendi*.  See *United States v.*

*Cotton*, 535 U.S. 625, 633 n.3 (2002) (noting that the defendants

challenged the PSR's determination that the crime involved 1.5

kilograms of cocaine, which yielded a Guidelines offense level of

38, but "they never argued that the conspiracy involved less than

50 grams of cocaine base, which is the relevant quantity for

purposes of Apprendi, as that is the threshold quantity for the

penalty of life imprisonment in 21 U.S.C. § 841(b)(1)(A)"

(emphasis added)).

 Also instructive is *Witte v. United States*, 515 U.S. 389

(1995).  There, the drug-quantity calculations that supported the

defendant's sentence for a conviction arising from a 1991 drug

transaction included quantities from an uncharged 1990 drug

16

transaction as relevant conduct.  When the defendant was later

indicted for the 1990 transaction, he moved to dismiss the

indictment on double-jeopardy grounds.  The Court recognized that

the inclusion of the 1990 conduct increased the defendant's

offense level and corresponding Guidelines range, but it pointed

out that the sentence "still falls within the scope of the

legislatively authorized penalty (5 to 40 years)."  Id. at 399

(emphasis added).  The Court then concluded that the defendant's

first sentence did not count as "punishment" for the separate

offense of committing the 1990 transaction.  Id. at 399-400.  The

Court observed that courts had traditionally been permitted to

use uncharged conduct to inform their sentencing discretion, and

the Court specifically stated that the advent of the Guidelines,

with their "relevant conduct" rules, did not mean that offenders

were now being "punished" for uncharged conduct as a separate

offense.  Id. at 397-402.  The Court concluded:

> Because consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense.

Id. at 406.

17

These cases, and others like them,[6] do not discuss the Sixth Amendment right to a jury trial, and we do not pretend otherwise. What is true, however, is that the Supreme Court has repeatedly blessed the Guidelines and upheld them against sundry constitutional challenges, often employing the proposition that the United States Code, and not the Guidelines, establishes maximum sentences for offenses. The Supreme Court's cases, and ours, have articulated a particular vision of the interaction between the Guidelines and the United States Code, and it is a vision that has held constitutional meaning. To reject that view of the Guidelines would not directly "overrule" any Supreme Court holding--a prerogative reserved unto the Court itself--but it would plainly create an unsettling tension with them.

Blakely may have weakened the long-embraced distinction between United States Code maxima and Guidelines ranges, but we cannot conclude that Blakely--which explicitly reserved comment on the Guidelines--has abolished the distinction's importance. The sentencing scheme at issue in Blakely, like that involved in Apprendi, essentially established two distinct statutory maximum sentences, with the choice between them turning on judge-made

---

[6] See, e.g., United States v. Watts, 519 U.S. 148, 156 (1997) (per curiam) (stating that "we have held that application of the preponderance standard at sentencing generally satisfies due process"). The Watts Court held that the sentencing judge could consider conduct underlying charges of which the defendant had been acquitted, the same factual scenario at issue in today's case. See id. at 156-57.

18

findings of fact.  In such a circumstance, it makes sense to say that the legislature has effectively created distinct offenses.[7] When the legislature has thus created different offenses, the defendant has a right to have a jury of his peers decide whether he is guilty of all of the elements of the more aggravated offense.  See Apprendi, 530 U.S. at 476-77.  But the Guidelines do not present such a stark case.  We do not believe that the Sentencing Commission can be thought of as having created for each United States Code section a hundred different Apprendi "offenses" corresponding to the myriad possible permutations of Guidelines factors, with each "offense" then requiring jury findings on all of its (Guidelines-supplied) elements.  Given the nature of the Guidelines, we think the better view--and one that respects the prior decisions of both the Supreme Court and this court--is that the relevant "offenses" and "maximum punishments" are those defined and authorized by Congress in the United States Code.  Judicial findings under the Guidelines that set sentences within that authorized range therefore do not offend the Constitution.

---

[7] See Ring, 536 U.S. at 609 (explaining that the judge's finding of "an aggravating circumstance necessary for imposition of the death penalty . . . operates as the functional equivalent of an element of a greater offense" (internal quotation marks omitted)); Apprendi, 530 U.S. at 494 (observing that the effect of the hate-crime enhancement was "to turn a second-degree offense into a first-degree offense").

The Supreme Court might later decide that <u>Blakely</u> is broad enough to sweep away any distinction between the federal Guidelines and the statutes that the Court addressed in <u>Apprendi</u>, <u>Ring</u>, and <u>Blakely</u>; the peculiar nature of the Guidelines might not serve to save them from the fate of the statutes involved in those cases.  <u>Cf.</u> <u>Blakely</u>, slip op. at 12-13 (O'Connor, J., dissenting).  Nonetheless, considering the entire matrix of Supreme Court and circuit precedent, we adhere to the position that the Guidelines do not establish maximum sentences for <u>Apprendi</u> purposes.  In writing these words we are more aware than usual of the potential transience of our decision.  We trust that the question presented in cases like this one will soon receive a more definitive answer from the Supreme Court, which can resolve the current state of flux and uncertainty; and then, if necessary, Congress can craft a uniform, rational, nationwide response.

**B.  Drug-quantity findings**

In light of our conclusion that <u>Blakely</u> does not apply to Pineiro's case, the sentencing judge's factual findings regarding drug quantities are not problematic under governing law.  The Guidelines direct the judge to impose a sentence based not only on the conduct reflected in the verdict but also on other related conduct.  <u>See</u> U.S.S.G. § 1B1.3; <u>Edwards</u>, 523 U.S. at 513-15.  That was the proper approach in this case, notwithstanding the

fact that the jury specifically acquitted Pineiro of the large drug quantities later found by the judge.  See Watts, 519 U.S. at 152-57 (holding that the sentencing judge may consider drug quantities of which a defendant has been acquitted).

## C.    "Organizer or leader" enhancement

The district court imposed a four-level enhancement under U.S.S.G. § 3B1.1 based on its conclusion that Pineiro acted as an "organizer or leader" of a criminal activity.  Pineiro objected on the ground that the evidence did not support such a finding. We review the district court's interpretation and application of the Guidelines de novo and its underlying factual findings for clear error.  United States v. Cabrera, 288 F.3d 163, 168 (5th Cir. 2002).  A finding of fact is clearly erroneous if, based on a consideration of all the evidence, we are left with the definite and firm conviction that a mistake has been made.  Id.

In deciding whether to impose the enhancement, the court is to consider the following factors: (1) the exercise of decisionmaking authority, (2) the nature of the defendant's participation in the commission of the offense, (3) the recruitment of accomplices, (4) any claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing, (6) the nature and scope of the illegal activity, and (7) the degree of control or authority exercised over others.  U.S.S.G. § 3B1.1, cmt. n.4.

21

Pineiro argues that the district court erred in applying the enhancement because the evidence showed only that he sold a substantial amount of drugs to his accomplices, not that he acted as a leader of the enterprise. As he points out, several circuits have held that a buyer-supplier relationship is insufficient to qualify for the "organizer or leader" sentence enhancement. See United States v. Sayles, 296 F.3d 219, 225 (4th Cir. 2002) (citing cases). This record, however, discloses evidence that goes well beyond a mere buyer-seller relationship between Pineiro and his co-conspirators. The evidence permits the conclusion, for instance, that Pineiro directed and paid several couriers, including a courier who acted for a co-conspirator. The general character of the evidence, as a fact-finder could view it, is that Pineiro oversaw the logistics of a drug-distribution scheme in which he had drugs delivered from Mexico to his property in Texas and then acted as the exclusive supplier to several co-conspirators in Louisiana over the course of several years. The evidence here is thus not unlike that in past cases in which we have upheld the organizer enhancement. See United States v. Cooper, 274 F.3d 230, 246-47 (5th Cir. 2001); United States v. Castillo, 77 F.3d 1480, 1493 (5th Cir. 1996). Further, our precedents permit the district judge to consider the quantity of drugs supplied as one factor among others in considering the organizer enhancement, see United States v. Valencia, 44 F.3d 269, 273 (5th Cir. 1995), and, on the

22

basis of the district court's factual findings, a substantial amount of drugs was indeed involved.[8]  The evidence was conflicting on many issues, but we cannot say that we are left with a firm conviction that a mistake has been made.  Therefore, there was no clear error in imposing the enhancement.

### III. CONCLUSION

For the foregoing reasons, the defendant's sentence is AFFIRMED.

---

[8]     Pineiro also argues that, even if the district judge's factual findings are not clearly erroneous considering the record as a whole, we must nonetheless vacate and remand for further findings because the district judge legally erred in imposing the enhancement solely on the basis of the PSR's conclusion that Pineiro was a "supplier of drugs."  But the same paragraph of the PSR also stated more broadly that Pineiro was "responsible for the distribution" of a large amount of drugs, and other portions of the PSR (which the district court adopted) provided a factual basis for the organizer enhancement.  Cf. Valencia, 44 F.3d at 272-73 (rejecting an argument similar to Pineiro's).