**UNITED STATES of America,
Plaintiff,**

v.

**Evelia QUINTERO–ARAUJO,
Defendant.**

**Nos. CR–02–44E, CV–04293–E–BLW.**

United States District Court,
D. Idaho.

Oct. 25, 2004.

Michael Joseph Fica, United States Attorney, Pocatello, ID, for Plaintiff.

Stephen J. Blaser, Blaser, Sorensen & Hansen, Blackfoot, ID, for Defendant.

## Order

EDWARD C. REED, JR., District Judge.

### I.   Factual and Procedural Background

On January 8, 2003, defendant Evelia Quintero–Araujo ("defendant") entered into a plea agreement (# 102) with the Government. Pursuant to the plea agreement, the defendant plead guilty to Counts One and Five of the Indictment, which charged the defendant as to Count One with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 846; and as to Count Five with Possession With Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The Government agreed to dismiss Counts Two, Three, Four and Six in exchange for defendant's plea of guilty to Counts One and Five.

This court then sentenced (# 158) defendant on June 9, 2003. We deleted a two level increase for possession of a firearm from the presentence report, denied the defendant's motion for an adjustment for obstruction of justice, and applied a four-level enhancement for being an organizer/leader because of the court's factual finding that defendant was an organizer/leader. Since we found that defendant's offense level was a 35 with a sentencing range of 168 to 210 months, we sentenced (# 159) defendant to 185 months for each count with the sentences to run concurrently.

As part of the plea agreement, defendant agreed not to appeal the sentencing unless the sentence exceeded the maximum permitted by statute or was the result of an incorrect application of the United States Sentencing Guidelines ("Federal Sentencing Guidelines," "Sentencing Guidelines" or "Guidelines"). Therefore, defendant did not appeal her sentence to the Ninth Circuit, and her sentence became final once the time for appeal lapsed on June 19, 2003. *See* Fed. R.App. Proc. 4(b)(1)(A) (stating that defendant has 10 days to file notice of appeal in criminal case); *Teague v. Lane,* 489 U.S. 288, 295, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) (holding that a case is "final" when the "judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed").[1]

---

1. It does not appear that defendant had a right to petition the Supreme Court directly without filing an appeal in the Ninth Circuit. *See* Sup.Ct. R. 11 (stating that Court will grant writ of certiorari in certain cases still pending before a circuit court of appeals if the case is "of such imperative public importance as to justify deviation from normal appellate practice[,]" but providing no such exception for appeals directly from district court). Even if defendant were to successfully argue that her sentence became final when the time to file a writ of certiorari with the Supreme Court had elapsed, *see* Sup.Ct. R. 13 (allowing 90 days for filing petition for writ of certiorari), her conviction would be considered "final" on September 7, 2003, which would not change the analysis in this order.

On May 24, 2004, defendant, who was proceeding pro se, filed a motion (# 166) for extension of time until July 19, 2004, in which to file a habeas motion pursuant to 28 U.S.C. § 2255. Our order (# 168) pointed out to defendant that it appeared the one-year statute of limitations for her Section 2255 motion would likely expire on June 8, 2004, and also appointed counsel for defendant from the CJA Panel for the District of Idaho to assist her. Defendant's new counsel filed a bare bones 2255 motion (# 170) on the June 8, 2004 deadline, and, thus, our order (# 169) afforded defendant an additional twenty days in which to file an amended motion.

In the interim, on June 24, 2004, the Supreme Court announced its decision in *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which held the state of Washington's sentencing scheme unconstitutional. Since Washington's sentencing scheme was similar to the Federal Sentencing Guidelines in some respects, including the use of judicial fact-finding to enhance sentences, the *Blakely* decision caused substantial concern in federal courts over the constitutionality of the Guidelines. *See, e.g., United States v. Losoya–Mancias,* 332 F.Supp.2d 1261, 1263–64 (recognizing that *Blakely* has caused havoc in federal district and circuit courts as to the application of *Blakely* ); *see also Blakely,* 124 S.Ct. at 2549 (O'Connor, J., dissenting) ("The Court ignores the havoc it is about to wreak on trial courts across the country.").

On July 7, 2004, after some additional delays, defendant filed an "addendum" (# 175/176) to her Section 2255 motion, which addressed the *Blakely* issue. On July 8, 2004, we warned (# 177) defendant that an amended motion "must include all claims for relief of which Defendant is aware. Any claim not made in the amend-

ed motion is deemed to be waived and may not be asserted in this or any future writ brought by Defendant." We also cautioned defendant that "[i]t may not be assumed at this time that *Blakely* will necessarily apply retroactively."

Then, on July 15, 2004, defendant filed an amended motion (# 178) to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. The motion (# 178) raises three issues, including (1) that the court engaged in unconstitutional judicial fact-finding in violation of *Blakely;* (2) that defendant's Sixth Amendment rights were violated because she was afforded ineffective assistance of counsel, and (3) defendant's Fifth Amendment due process rights were violated because she was represented by various attorneys through the criminal proceedings and her attorney allowed an associate from another state to negotiate the plea agreement.

On September 9, 2004, the Government filed its response (# 180), arguing among other things that *Blakely* is not retroactive. Defendant then filed a traverse (# 182), which argued that *Blakely* applied to the Federal Sentencing Guidelines, *United States v. Ameline,* 376 F.3d 967 (9th Cir.2004), but failed to address the retroactivity issue. We now rule on the retroactivity issue and find that *Blakely* does not apply retroactively to cases on collateral review.

## II. Analysis

### A. The Impact of *Blakely*

The *Blakely* case involved a challenge to the state of Washington's sentencing scheme, which is similar in many respects to the Federal Sentencing Guidelines, including its use of judicially-found facts to enhance sentences beyond the base guideline range.[2] In *Blakely,* the defendant had

2. There are some differences between Washington's sentencing scheme and the Federal

plead guilty to second-degree kidnaping involving domestic violence and the use of a firearm, which is a class B felony, but the plea did not include admission of any other relevant facts. 124 S.Ct. at 2534–35. Although a class B felony is punishable by confinement not to exceed a term of ten years under the relevant Washington statute, Washington's Sentencing Reform Act, which is also statutory, set a presumptive sentencing range of 49–53 months for kidnaping involving domestic violence and the use of a firearm.[3] *Id.*, 124 S.Ct. at 2535. Nevertheless, the trial court, relying on its own factual findings, imposed an "exceptional sentence" of 90 months based upon its finding that the defendant had acted with "deliberate cruelty" in committing the underlying kidnaping offense. *Id.*, 124 S.Ct. at 2535.

Despite the fact that the 90 month sentence was less than the ten-year statutory maximum for class B felonies, the *Blakely* Court extended its reasoning in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), and held that this Washington sentencing scheme did not comply with the Sixth Amendment's right to trial by jury because it allowed the

enhancement of a sentence based upon facts (i.e., "deliberate cruelty") found by the judge and not the jury. 124 S.Ct. at 2536, 2539. In clarifying the term "statutory maximum" for *Apprendi* purposes, the *Blakely* majority altered courts' understanding of "statutory maximum" by defining it as the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.*, 124 S.Ct. at 2537 (emphasis in original); *see Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004) (stating that *Blakely* altered courts' understanding of the term "statutory maximum"); *see also United States v. Saya*, 247 F.3d 929, 941–42 (9th Cir.2001) (distinguishing pre-*Blakely* between "offense statutory maximum" and the Guidelines themselves and holding that defendant cannot obtain relief for *Apprendi* violations when defendant's ultimate sentence is below the "statutory maximum" authorized by the United States Code). Therefore, the *Blakely* Court held that the relevant "statutory maximum" under Washington law was the upper end of the statutory guideline range based upon facts found by a jury or admitted to by the defendant, and that the *Blakely* defendant's sentence of 90 months was unconstitutional because it exceeded the statutory guideline sentencing range of 53 months. 124 S.Ct. at 2543.

Sentencing Guidelines. For instance, while Washington's scheme is statutory, the Federal Guidelines, while binding on federal judges, are not statutes and merely *"fetter the discretion of sentencing judges to ... impose sentences within the broad limits established by Congress."* *United States v. Pineiro*, 377 F.3d 464, 471 (5th Cir.2004) (quoting *Mistretta v. United States*, 488 U.S. 361, 396, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)) (emphasis added in *Pineiro*). Although the *Pineiro* court relied on such a distinction in upholding the Federal Sentencing Guidelines to a *Blakely/Apprendi* challenge, it is unclear whether this distinction between the Guidelines and

federal statutes will eventually withstand Supreme Court scrutiny. *Id.* at 473 (recognizing that *Blakely* has weakened the distinction between the United States Code and the Federal Sentencing Guidelines and that the Supreme Court may one day "sweep away" such a distinction).

3. The domestic violence stipulation did not increase the potential range of defendant's sentence, but subjected him to such measures as a "no contact" order. *Blakely*, 124 S.Ct. at 2535 n. 3.

■ Although *Blakely* expressly withheld judgment on the Federal Sentencing Guidelines, *id.,* 124 S.Ct. at 2538 n. 9, the Ninth Circuit has since ruled that the reasoning of *Blakely* applies with equal force to the Guidelines. *Ameline,* 376 F.3d at 974 (holding that Federal Sentencing Guidelines violate Sixth Amendment insofar as they allow judges to find facts that enhance sentences). Under *Ameline,* it is not seriously disputed that this court engaged in the type of judicial fact-finding that *Blakely* forbids because the court, and not the jury, found that defendant was the organizer/leader and was subject to a four level enhancement in sentencing. However, defendant's conviction and sentence became final over a year before *Blakely* and *Ameline* were decided. Therefore, we must first address whether the holdings in *Blakely* and *Ameline* should be applied retroactively to defendant on collateral review.[4]

## B. Retroactivity—Generally

■ When a decision of the Supreme Court results in a "new" rule, the new rule applies to all criminal cases on direct review. *Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). However, a new rule only applies retroactively to convictions that are final in limited circumstances. *Id.* Therefore, retroactivity is "properly treated as a threshold question, for, once a new rule is applied

to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Teague,* 489 U.S. at 300, 109 S.Ct. 1060.

■ The retroactivity inquiry determination involves a three-step process. *Beard v. Banks,* —— U.S. ——, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004). First, the court must determine when the defendant's conviction became final. *Id.* Second, the court must determine if the rule sought to be applied is a "new" rule. *Id.; Graham v. Collins,* 506 U.S. 461, 466, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993). In other words, a court must ascertain the "legal landscape as it then existed and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule." *Beard,* 124 S.Ct. at 2510 (internal citations and quotations omitted). "Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions" to the presumption against retroactivity. *Id.*

## C. Did *Blakely* Announce a New Rule?

First, we have already determined that defendant's conviction was final on June 19, 2003, which is the date that her time for appeal had elapsed and over a year before the Supreme Court decided *Blakely.* Therefore, we must move to the sec-

---

4. The Supreme Court has not made *Blakely* retroactive on collateral review. *See Cook v. United States,* 386 F.3d 949 (9th Cir.2004). Therefore, since the *Ameline* court clearly extended *Blakely* to judicial fact-finding of enhancements under the Federal Sentencing Guidelines, the analysis in this order will focus on whether *Blakely* is retroactive and whether it announced a new rule. If *Blakely* announced a new rule, then *a fortiori Ameline's* extension of *Blakely* to the Sentencing Guidelines also announced a new rule. This is especially true since prior to *Blakely,* the Ninth Circuit had recently upheld the practice

of judicial fact-finding under the Guidelines to an *Apprendi*-type challenge when the resulting sentence was below that authorized by the United States Code itself. *See United States v. Alvarez,* 358 F.3d 1194, 1212 (9th Cir.2004) (upholding the 188–month sentence imposed by the district court because it was less than the 20–year statutory maximum under the United States Code even though the trial judge had determined the defendant's base offense level under the Sentencing Guidelines by finding that a greater quantity of drugs was involved in the offense than that authorized by the jury's finding).

ond step of the inquiry to determine the legal landscape as of June 19, 2003, and to decide whether the *Blakely* decision announced a "new" rule in extending *Apprendi* to sentencing schemes where the judge finds facts and imposes sentences greater than what is authorized based on the facts admitted to by defendant or found beyond a reasonable doubt by a jury.

■ Generally, a rule is "new" if it "breaks new ground," "imposes a new obligation on the States or the Federal Government," or was not *"dictated* by precedent existing at the time the defendant's conviction became final." *Graham,* 506 U.S. at 467, 113 S.Ct. 892 (citation and internal quotations omitted). Although a rule is clearly new if it overrules a prior decision, it is more difficult to discern the novelty of the rule when a decision merely extends the reasoning of prior cases. *Id.* In such a case, a rule is new if reasonable jurists hearing a claim at the time defendant's conviction became final " 'would have felt compelled by existing precedent' to rule in [her] favor." *Id.* (quoting *Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)). "To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060 (emphasis in original).

■ The extension of *Apprendi* to judicial fact-finding in the sentencing phase, where the ultimate sentence was below the statutory maximum set by Congress, was undoubtedly a "new" rule because it was not dictated by precedent at the time the defendant's conviction became final.[5] In *Apprendi* itself, the Court stated that

"[w]e should be clear that nothing in [the history of the development of the right to trial by jury and the right to have the jury verdict based on proof beyond a reasonable doubt] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating to both offense and offender—in imposing a judgment *within the range* prescribed by statute." 530 U.S. at 481, 120 S.Ct. 2348 (emphasis in original). The *Apprendi* Court, like the *Blakely* Court, also "express[ed] no view on the subject" of the federal Guidelines and merely cited to its prior decision in *Edwards v. United States,* 523 U.S. 511, 515, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), for the proposition that "a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines." *Apprendi,* 530 U.S. at 497 n. 21, 120 S.Ct. 2348.

This *Apprendi* language supports the commonly held pre-*Blakely* belief that the Sentencing Guidelines were compatible with the defendant's rights under the Sixth Amendment so long as the ultimate sentence was less than that set by the United States Code. In other words, the term "statutory maximum" was that set by the United States Code and not the Guideline range itself.

Although the dissents by Justices O'Connor and Breyer in *Apprendi,* 530 U.S. at 550–52, 564–65, 120 S.Ct. 2348, feared that the Federal Sentencing Guidelines might be swept away in *Apprendi's* wake, reasonable jurists were not compelled by *Apprendi* to hold the Guidelines unconstitutional. In fact, after *Apprendi,* most of the federal Circuits addressed this issue and not one court held that *Apprendi*

---

5. As previously discussed, *Blakely* did not announce the rule that the Federal Sentencing Guidelines were unconstitutional because the Court expressly withheld judgment on this

issue. 124 S.Ct. at 2538 n. 9. However, the Ninth Circuit in *Ameline* made this logical leap by holding that *Blakely's* reasoning applies to the Guidelines. 376 F.3d at 974.

applied to Guideline calculations that were within the statutory maximum set by Congress. *See Simpson*, 376 F.3d at 681 (compiling cases to validate claim that every federal court of appeals prior to *Blakely* had held that *Apprendi* did not apply to Guideline calculations made within the statutory maximum). In addition, four Justices dissented in *Blakely* with three Justices writing separate dissents, suggesting that *Blakely* was not compelled by precedent. 124 S.Ct. at 2543–50 (O, Connor, J., dissenting), 124 S.Ct. at 2550–51 (Kennedy, J., dissenting), 124 S.Ct. at 2551–2562 (Breyer, J., dissenting); *see also Beard*, 124 S.Ct. at 2513 n. 5 (commenting that "we do not suggest that the mere existence of a dissent suffices to show that the rule is new[,]" but at the same time reasoning that the dissent of four Justices supports proposition that reasonable jurists were not compelled to extend previous rule, and, thus, that rule was new).

Furthermore, even after *Blakely*, the Fourth and Fifth Circuits found that *Blakely* did not apply to the Federal Sentencing Guidelines.[6] *See United States v. Pineiro*, 377 F.3d 464, 473 (5th Cir.2004); *United States v. Hammoud*, 381 F.3d 316, 353 (4th Cir.2004). If not one circuit court after *Apprendi* extended *Apprendi's* logic to the Sentencing Guidelines and some circuit courts have disagreed even after *Blakely* whether *Apprendi* applies to the Guidelines, reasonable jurists were clearly not compelled to extend *Apprendi* to judicial fact-finding under the Federal Sen-

tencing Guidelines prior to *Blakely*. *Blakely* and *Ameline* were not "dictated by precedent" at the time defendant's conviction became final, *Teague*, 489 U.S. at 301, 109 S.Ct. 1060, and reasonable jurists clearly were not compelled to so extend *Apprendi*, as evidenced by the fact that not one circuit court of appeals applied or extended *Apprendi* in the manner that *Blakely* did; therefore, *Blakely* announced a new rule. *See Simpson*, 376 F.3d at 681 (commenting that *Blakely* was "based on the Constitution and was *not dictated or compelled* by *Apprendi* or its progeny") (emphasis added).

## D. The *Blakely* Rule is Procedural in Nature

■ Since *Blakely* announced a new rule, we must decide whether to apply this new rule retroactively to defendant on collateral review. Although new rules do not generally apply retroactively, the Supreme Court has identified two narrow exceptions to non-retroactivity. First, a rule applies retroactively if it forbids "punishment of certain *primary conduct* or to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Beard*, 124 S.Ct. at 2513 (emphasis added) (internal quotations and brackets omitted). Second, a more limited exception to non-retroactivity applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (citation and internal quotations omit-

---

**6.** Since the *Blakely* majority expressly did not comment on the Federal Sentencing Guidelines and at least two Circuit courts have decided that *Blakely* does not apply to the Guidelines, there is a plausible argument that the extension of *Blakely* to the Guidelines is not compelled by precedent. According to this line of reasoning, when the Supreme Court announces its decision on *Blakely's* application to the Sentencing Guidelines, it

could be announcing a new rule despite the fact that various circuit courts, including the Ninth Circuit, have already held that *Blakely* applies to the Guidelines. However, we need not decide this issue here because *Blakely* itself announced a new rule and, therefore, defendant will need to show an exception to non-retroactivity to benefit from the rule in either case.

ted). This exception applies only to "a small core of rules requiring observance of those *procedures* that . . . are implicit in the concept of ordered liberty." *Id.* (internal quotations omitted).

In *Schriro,* which was announced the same day as *Beard* and *Blakely,* the Court classified the two exceptions slightly differently: either as substantive or procedural rules. 124 S.Ct. at 2522. According to the Court, a substantive rule, which embodies the first exception, includes "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish" or decisions that "narrow the scope of a criminal statute by interpreting its terms." *Id.* (internal citations and quotations omitted). In contrast, a rule of procedure "merely raise[s] the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.,* 124 S.Ct. at 2523.

█ While the presumption is against applying a new procedural rule retroactively on collateral review, *see Teague,* 489 U.S. at 305–06, 109 S.Ct. 1060, new substantive rules generally apply retroactively. *Schriro,* 124 S.Ct. at 2522. Courts distinguish between procedural and substantive rules because a change in a substantive rule makes it more likely that a defendant is convicted of an act the law cannot punish or faces a punishment the law cannot impose on her. *Id.,* 124 S.Ct. at 2522–23. In contrast, a new rule of procedure has a more "speculative connection to innocence" and, therefore, is only given retroactive effect to a "small set of watershed rules of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding." *Id.,* 124 S.Ct. at 2523 (internal citations and quotations omitted).

█ In this case, the *Blakely* rule addresses the propriety of judicial fact-finding during the sentencing phase, which is not a substantive rule dealing with the propriety of defendant's primary conduct. The *Blakely* rule is procedural in nature because it is related to the *method* in which the enhancements are found and not the enhancements themselves. In fact, the *Blakely* majority referred to the state of Washington's sentencing scheme as procedural. *Blakely,* 124 S.Ct. at 2538 ("Because the State's sentencing *procedure* did not comply with the Sixth Amendment, petitioner's sentence is invalid.") (emphasis added).

The fact that *Blakely* is a procedural rule is confirmed by a closer review of *Schriro,* 124 S.Ct. 2519, which analyzed the retroactivity of *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (holding that Arizona's death penalty scheme, in which a judge was authorized to find aggravating factors necessary to impose the death penalty, was unconstitutional under the Sixth Amendment and *Apprendi* ). In *Schriro,* the criminal defendant/appellant was sentenced to death under the same Arizona death penalty scheme that was ruled unconstitutional in *Ring. Schriro,* 124 S.Ct. at 2521–22. However, like the defendant in this case, the defendant/appellant's case had become final before both *Apprendi* and *Ring* were decided. *Id.* Therefore, since the Court was faced with the issue on collateral review, it was first forced to address whether *Ring* announced a new rule, which the Court held that it did. *Id.,* 124 S.Ct. at 2526.

The Court also found that *Ring* was procedural in nature because it did not alter the range of conduct or the class of persons that the law punishes. *Id.,* 124 S.Ct. at 2523. The Court reasoned that *Ring* held that the elements of the offense, including aggravating factors necessary for imposition of the death penalty, must be found by the jury under the Sixth Amendment. *Id.,* 124 S.Ct. at 2523–24. There-

fore, since the Court determined that *Ring* merely addressed the method in which the elements were determined and not the elements themselves, this supported the conclusion that the *Ring* rule was a procedural rule. *See id.* Finally, the Court further found that *Ring* did not announce a watershed rule of criminal procedure implicating fundamental fairness and accuracy in the criminal proceeding and, therefore, *Ring* did not apply retroactively. *Id.*, 124 S.Ct. at 2526.

Like *Ring*, which applies to the role of judicial fact-finding in Arizona's capital punishment sentencing scheme, *Blakely* is a procedural rule that the Court might one day apply to invalidate judicial fact-finding to enhance sentences under the Federal Sentencing Guidelines.[7] *Blakely*, like *Ring*, does not alter the range of primary conduct or the class of persons that the law punishes. *Blakely* merely addresses the method under which sentencing enhancements must be found—by a jury and not a judge—and not the elements of the offense itself; thus, under the reasoning of *Ring*, *Blakely* is clearly a procedural rule. The question now becomes whether *Blakely* is one of the narrow class of watershed procedural rules that should be applied retroactively on collateral review.

### E. Exceptions to Non–Retroactivity of New Procedural Rules on Collateral Review

To apply retroactively, a procedural rule must be one " 'without which the likelihood of an accurate conviction is *seriously* diminished.' " *Schriro*, 124 S.Ct. at 2523 (quoting *Teague*, 489 U.S. at 313, 109 S.Ct. 1060) (emphasis added). This class of rules is extremely narrow and it is "unlikely that any has yet to emerge." *Id.* (internal quotations and ellipsis omitted). In *Schriro*, the Court cast serious doubt on the possibility that an *Apprendi*-type problem in allocating fact-finding authority to judges during sentencing is in this narrow class of procedural rules that apply retroactively. *Id.*, 124 S.Ct. at 2525 (stating that the question is not whether juries are more accurate than judges, but whether "judicial factfinding so seriously diminishes accuracy that there is an impermissibly large risk of punishing conduct the law does not reach") (internal citations, quotations and brackets omitted).

Although the Ninth Circuit had initially found that *Ring* was a watershed rule partly because it implicated the relative accuracy of factual findings made by a jury compared to a judge, *Summerlin v. Stewart*, 341 F.3d 1082, 1109–1116 (9th Cir. 2003), the Supreme Court, in reversing the decision of the Ninth Circuit, cast doubt on the proposition that an argument based on the relative accuracy of a judge versus a jury is enough to trigger an exception to retroactivity. *Schriro*, 124 S.Ct. at 2525 ("When so many presumably reasonable minds continue to disagree over whether juries are better fact finders *at all*, we

---

7. As noted above, although the Supreme Court heard oral arguments on October 4, 2004 and a decision is expected shortly, the Court has not yet ruled on whether *Blakely* applies to the Federal Sentencing Guidelines. *See United States v. Booker*, 375 F.3d 508 (7th Cir.2004), *United States v. Fanfan*, 2004 WL 1723114 (D.Me.2004), *cert. granted and consolidated by*, *United States v. Booker*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004) and *United States v. Fanfan*, —— U.S. ——,

125 S.Ct. 12, 159 L.Ed.2d 838 (2004). Furthermore, although the plurality opinion in *Teague*, 489 U.S. at 300, 109 S.Ct. 1060, indicated that the Court should face the retroactivity question at the time a new rule is announced, the retroactivity question does not appear to be before the Court in either *Booker* or *Fanfan* as it has not been briefed or argued before the Court. We note that this still does not foreclose the Court from raising the issue *sua sponte* as it did in *Teague*, 489 U.S. at 300, 109 S.Ct. 1060.

cannot confidently say that judicial fact-finding *seriously* diminishes accuracy.") (emphasis in original). Since the *Schriro* Court determined that the unconstitutional use of judicial fact-finding to increase a life sentence to a death sentence was not a sufficient enough to trigger retroactivity, it is unlikely that the unconstitutional use of judicial fact-finding to apply a four level sentencing enhancement, as in this case, would *seriously* diminish the likelihood of an accurate conviction so as to trigger retroactivity.

As the *Schriro* Court explained, the right to jury trial is a fundamental civil liberty, and courts are bound to enforce the Sixth Amendment's guarantees as those rights are currently interpreted. *Id.,* 124 S.Ct. at 2526. However, "it does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the [court] faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart." *Id.*

Likewise, in defendant's case, she had a full and fair opportunity to raise this issue during the plea taking and sentencing proceedings. Although defendant chose not to appeal, she could have raised this issue on appeal if she so desired. The fact that the defendant questions the accuracy of the judicially-found facts is not enough to trigger retroactivity because this procedure does not "seriously diminish" the accuracy of defendant's conviction and there is not an "impermissibly large risk" that we are punishing conduct that the law does not reach. *See Schriro,* 124 S.Ct. at 2525. In a death penalty case, the *Schriro* Court made it clear that these types of *Apprendi*

issues likely do not apply retroactively. Therefore, we are forced to conclude that defendant's reliance on *Blakely* fails because it is not one of the narrow class of watershed procedural rules, implicating fundamental fairness and accuracy of the criminal proceeding, that applies retroactively, and we must deny her habeas motion on this basis.[8] *See Concepcion v. United States,* 328 F.Supp.2d 372, 374 (E.D.N.Y.2004) (holding that *Blakely* does not apply retroactively to cases on collateral review); *Morris v. United States,* 333 F.Supp.2d 759, 772 (C.D.Ill.2004) (same); *United States v. Stoltz,* 325 F.Supp.2d 982, 987 (D.Minn.2004) (same); *see also In re Dean,* 375 F.3d 1287, 1290 (11th Cir.2004) (relying on *Schriro* for the proposition that the "Supreme Court has strongly implied that *Blakely* is not to be applied retroactively").

**F. Sufficiency of Pleadings—Rules of 28 U.S.C. § 2255**

According to Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, habeas motions "shall specify all grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, should have knowledge and *shall set forth in summary form the facts* supporting each of the grounds thus specified." (emphasis added). Rule 2(b) further states that motions "shall be in substantially the form annexed to these rules." *Id.* The Model Form For Motions Under 28 U.S.C. § 2255 informs petitioners that "[i]f you select one or more of these grounds for relief, you must allege facts." *See* Appendix of Forms to Rules Governing Section 2255 Proceedings for the United States District Courts.

---

**8.** Since we find that *Blakely* does not apply retroactively, we need not reach the Government's potentially meritorious theory that de-

fendant procedurally defaulted the issue by *not presenting it* at her sentencing or on appeal.

■ Defendant's motion (# 178) does not sufficiently detail her factual allegations as to (1) her claim of ineffective assistance of counsel, and (2) her basis for alleging a due process violation. The motion states in conclusory fashion that "her counsel was not knowledgeable in the application and interpretation of the Sentencing Guidelines and did not properly present a defense for the Defendant in relationship to the allegation of her leadership role, sales, and puffing, disparity in sentences, disproportionate sentences, safety valve, protection and equal protection for information exchanged for downward departure." We conclude that this notice-type pleading is not sufficient to satisfy the requirement of alleging facts sufficient to point to a real possibility of constitutional error as required by Section 2255 Rule 2(b) and the Model Form. *See Blackledge v. Allison*, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (citing to Advisory Committee Notes to Rule 4, Rules Governing Section 2254 Cases in the United States District Courts—which is an analogous provision to Rule 4 governing 2255 motions—for the proposition that notice pleading is not sufficient in habeas corpus petitions brought under section 2254).

Defendant's motion is devoid of any facts from which the court can conclude that she suffered ineffective assistance of counsel. In particular, defendant's motion does not detail (1) how defendant's counsel performed inadequately or (2) that she suffered prejudice resulting from the inadequate performance. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant's motion also does not develop the facts underlying her due process claim.

Therefore, defendant shall be permitted thirty (30) days within which to file an amended habeas motion pursuant to 28 U.S.C. Section 2255 in which she shall be required to allege sufficient facts for the court to determine why defendant believes that she was denied both effective assistance of counsel and her due process rights. At that point, the court may possibly entertain a motion to dismiss under Federal Rule of Civil Procedure 12 or a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, both of which appear to the court to apply in habeas proceedings under 28 U.S.C. § 2255. *See* Rule 12 of Rules Governing Section 2255 Proceedings for the United States District Courts (stating that district court may apply Federal Rules of Civil Procedure if not inconsistent with procedures specifically prescribed by habeas rules).

**THEREFORE, IT IS HEREBY ORDERED** that defendant's motion (# 178) is DENIED without prejudice as to her ineffective assistance of counsel claim and her due process claim. Defendant's motion (# 178) **is DENIED** with prejudice as to her *Blakely* claim.

**IT IS HEREBY FURTHER ORDERED** that defendant shall have thirty (30) days within which to file a second amended motion as to her ineffective assistance of counsel claim and her due process claim. Such motion shall include sufficient factual allegations to allow the court to determine the factual basis of her claims. Defendant is not permitted to reassert her *Blakely* claim.