United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 20, 2006**

Charles R. Fulbruge III
Clerk

REVISED MARCH 21, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-61027

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARNELL DESHAWN MCCRIMMON, aka DARNELL WILLIAMS, aka QUANELL SIMS, aka DOMINIC ANDERSON, aka MARCUS THOMAS DAWSON, aka MONEY D. MCCRIMMON,

Defendant-Appellant.

------------------------------

Appeal from the United States District Court
for the Northern District of Mississippi

------------------------------

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

I

On February 3, 2003 Darnell McCrimmon, pursuant to a plea agreement, plead guilty and was convicted of conspiring to possess with the intent to distribute a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846. Acceding to the fact statement supporting the guilty plea, McCrimmon engaged in a transaction involving 287.3 grams of cocaine base.

The pre-sentence report ("PSR") indicated an offense level 35[1] and a criminal history category I, resulting in a sentencing guideline range of 168-210 months of imprisonment.

Prior to sentencing, McCrimmon filed objections to the PSR, as to the amount of cocaine used to determine his base offense level. Arguing that no weapons were involved in the offense, McCrimmon also sought a downward adjustment in his offense level, pursuant to the "safety valve" provision.[2] The district court rejected these objections and sentenced McCrimmon to 168 months of imprisonment, followed by a three-year term of supervised release.

On direct appeal ("*McCrimmon I*"), McCrimmon complained that the district court erred by not providing him safety-valve relief and that the district court did not have jurisdiction to entertain his guilty plea. McCrimmon did not allege error in the methodology of calculating his sentence. On June 9, 2004, we affirmed McCrimmon's conviction. However, we vacated and remanded the case for resentencing to allow the district court to correct its error in concluding that the PSR had adequately considered that a firearm

---

[1] In arriving at this conclusion, the probation officer calculated McCrimmon's base offense level by adding 412.3 grams of cocaine base, 214 ounces of cocaine base, two kilograms of cocaine base, and 126.5 ounces of cocaine powder. Then, converting the amounts to their marijuana equivalencies, the probation officer determined that the base offense level should be based on 113,601.26 kilograms of marijuana—an offense level of 38. The probation officer subtracted three levels for acceptance of responsibility, yielding a final offense level of 35.

[2] U.S.S.G. § 5C1.2.

was not used.[3] This Court directed the district court, on remand, to "fully explore whether McCrimmon satisfied the [safety-valve] requirements."[4]

On October 18, 2004, the district court conducted a second sentencing hearing, at which time McCrimmon restated his safety-valve objection and, also, contended that the district court violated *Blakely v. Washington*[5] by impermissibly basing his sentence on an amount of drugs greater than the 287.3 grams of cocaine to which McCrimmon had admitted. The district court, relying on *United States v. Pineiro*,[6] determined that *Blakely* was inapplicable and held that McCrimmon did not qualify for the safety-valve provision. Thus, the district court, again, sentenced McCrimmon to 168 months of imprisonment. McCrimmon timely filed notice of appeal.[7]

---

[3] *United States v. McCrimmon*, 97 Fed. Appx. 484 at 486 (2004) (per curiam) ("*McCrimmon I*").

[4] *Id.*

[5] *Blakely*, 124 S.Ct. 2531 (2004) (invalidating a state guideline sentence in violation of the Sixth Amendment where a defendant's sentence was greater than the maximum sentence allowed solely on the basis of facts found by the jury or admitted by the defendant). *Blakely* was decided fifteen days after we decided *McCrimmon I*.

[6] *Pineiro*, 377 F.3d 464, 473 (5th Cir. 2004), *vacated*, *Pineiro v. United States*, 125 S.Ct. 1003 (2005). *Pineiro* was decided one month after we decided *McCrimmon I* and three months prior to the resentencing hearing. Then, *Pineiro* was overruled one month after the rendering of the district court's final judgment at the resentencing hearing.

[7] In summary, the relevant events progressed, as follows: Sentenced April 17, 2003; *McCrimmon I* decided May 18, 2004; *Blakely* decided June 24, 2004; *Pineiro* decided July 12, 2004; re-sentenced October 18, 2004; *Booker* decided January 12, 2005; *McCrimmon II* argued September 29, 2005.

II

This Court reviews a sentencing court's decision to apply the safety-valve provision of the sentencing guidelines, U.S.S.G. § 5C1.2, for clear error.[8] A defendant is eligible for the safety-valve reduction when the sentencing court finds that:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.[9]

McCrimmon has the burden of showing that he is entitled to the safety-valve adjustment.[10]

The government's narcotic agent testified at the resentencing hearing that McCrimmon was evasive during an interview, regarding McCrimmon's own offense. The agent questioned McCrimmon's candor during the proffer session because he gave answers inconsistent with corroborated information provided by his codefendants

---

[8] *United States v. Miller*, 179 F.3d 961, 963-64 (5th Cir. 1999); *United States v. Villanueva*, 408 F.3d 193, 202-03 n.9 (5th Cir. 2005).

[9] U.S.S.G. § 5C1.2(5) (only this requirement, the fifth of five elements, is at issue in the present case); *United States v. Rodriguez*, 60 F.3d 193, 196 (5th Cir. 1995) (stating the safety-valve provision allows less knowledgeable and less culpable defendants who have fully assisted the government by providing all of the information they have to avoid the application of the statutorily mandatory minimum sentence).

[10] *United States v. Brenes*, 250 F.3d 290, 293 n.1 (5th Cir. 2001); *United States v. Flanagen*, 80 F.3d 143, 146-47 (5th Cir. 1996).

concerning his own drug-trafficking.  Moreover, McCrimmon ended the interview when asked about certain people involved in distributing the cocaine.  Consequently, the district court found both that McCrimmon had not been truthful regarding his own role in the offense and that he had not provided all of the information within his knowledge about the offense.  The district court noted that the premature termination of the proffer session was particularly compelling.

We agree.  The district court's finding that McCrimmon had been less than truthful is not clearly erroneous.  The agent's testimony was sufficient to support the district court's independent determination that McCrimmon was not entitled to the safety-valve adjustment.[11]  The district court did not err in refusing a safety-valve adjustment.

### III.

McCrimmon also contends that his case should be remanded for resentencing pursuant to *United States v. Booker*,[12] in order to allow the district court the opportunity to sentence him under a non-mandatory guidelines regime and without considering any unproven quantity of narcotics.

In response to a properly preserved objection pursuant to

---

[11] *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996) (stating that uncorroborated hearsay testimony may be relied upon at sentencing).

[12] 125 S.Ct. 738 (2005).

5

*Booker*, this Court "will ordinarily vacate the sentence and remand, unless [it] can say the error is harmless under [FED.R.CRIM.P. 52(a)]."[13] "The government must bear the burden of demonstrating beyond a reasonable doubt that the federal constitutional error of which the defendant complains did not contribute to the sentence he received."[14] If, however, the objection was not properly preserved, the plain error standard applies.[15] In order to establish plain error, the defendant must show (1) error, (2) that is clear or obvious, and (3) that affects substantial rights.[16] Moreover, "'[i]f all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"[17] Therefore, we must determine the applicable standard of review--decide whether McCrimmon properly preserved a *Booker*-type assertion of error.[18]

At the time of McCrimmon's first sentencing, neither *Blakely*

---

[13] *United States v. Akpan*, 407 F.3d 360, 376 (5th Cir. 2005) (internal quotations and citations omitted).

[14] *Id*. at 377.

[15] *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).

[16] *Id*.

[17] *Id*. (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).

[18] Though the government concedes clear error in the district court's application of the sentencing guidelines as mandatory rather than advisory, McCrimmon did not preserve his assertion of *Fanfan*-type error either on direct appeal or during the resentencing hearing, and he cannot meet the plain error burden (see *infra* IV).

nor *Booker* had been decided. Though not expressly alleging a Sixth Amendment violation, McCrimmon asserts that he preserved his argument for appeal, as a result of an objection wherein McCrimmon contested the consideration of facts pertaining to any quantity of drugs exceeding the 287.3 grams of cocaine that McCrimmon admitted selling to the government informant. McCrimmon's objection at the sentencing hearing sufficiently invokes the alleged *Booker* error.[19]

McCrimmon, however, did not assert a *Blakely*-type error on direct appeal, and we subsequently issued a remand order concerning only the safety-valve provision. At the resentencing hearing on remand, McCrimmon, again, raised the objection concerning the quantity of drugs used in his sentencing determination, this time citing *Blakely*. Never passing on the scope of remand, the district court cited *Pineiro*, ruling on the merits of the objection that *Blakely* was inapplicable to the federal sentencing guidelines.[20] On this appeal, McCrimmon, citing *Booker*, argues that the objection has been preserved and that the proper standard of review is set forth in *United States v. Akpan*, wherein we held that this Court will vacate and remand unless the error is harmless.[21]

---

[19] *But cf. United States v. Dowling*, 403 F.3d 1242, 1246 (11th Cir. 2005) (concluding that the defendant did not preserve a *Booker* claim because he did not make a constitutional objection at sentencing, which includes citing *Apprendi*, the Sixth Amendment, or the defendant's right to have facts found by a jury instead of a judge), *cited in*, *United States v. Pineiro*, 410 F.3d 282, 286 (5th Cir. 2005).

[20] *Pineiro*, 377 F.3d at 473.

[21] *Akpan*, 407 F.3d at 376.

The government, however, argues that consideration of McCrimmon's objection was outside the scope of our remand order and that McCrimmon's objection to the PSR at the resentencing hearing was, therefore, impermissibly raised.[22] Consequently, the government urges that the plain-error standard controls.[23] Moreover, the government contends that McCrimmon has failed to carry his burden of demonstrating plain error.

The scope of our mandate in *McCrimmon I*, vacating McCrimmon's sentence, determines whether McCrimmon rightfully renewed his *Blakely*-type objection at the second sentencing hearing.[24] We find that a *Blakely*-type objection exceeds the scope of this Court's prior order remanding the case on non-*Booker*-type grounds.

A district court on remand "must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court."[25] Additionally, pursuant to the "waiver approach" to the mandate rule:

> [t]he only issue on remand properly before the district court are those issues arising out of the correction of the sentence ordered by this court. In short, the resentencing court can consider whatever this court

---

[22] *See United States v. Marmolejo*, 139 F.3d 528, 530 (5th Cir. 1998).

[23] *Mares*, 402 F.3d 511, 520.

[24] "Thus, we affirmed the district court's refusal to reconsider its initial enhancement for obstruction of justice, because the defendant had not appealed that enhancement in *Marmolejo I and* it did not arise out of our mandate in *Marmolejo I*." *United States v. Matthews*, 312 F.3d 652, 658 (5th Cir. 2002) ("*Matthews II*") (emphasis added).

[25] *Id*. at 657 (internal quotations and citation omitted).

> directs--no more, no less.  All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below.[26]

The mandate rule is but a corollary to the law of the case doctrine.[27]  There are three exceptions to the mandate rule: "(1) the evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; (3) the earlier decision is clearly erroneous and would work a manifest injustice."[28]

The mandate in *McCrimmon I* directed the district court to fully explore whether McCrimmon met the safety-valve requirements:

> Accordingly, we VACATE McCrimmon's sentence and REMAND to the district court.  Upon remand, the district court should fully explore whether McCrimmon satisfied the requirements of U.S.S.G. § 5C1.2.
> VACATED AND REMANDED IN PART; AFFIRMED IN PART.[29]

This mandate cannot be said to allow a subsequent *Blakely* challenge, absent the application of one of the three exceptions to

---

[26]  *Marmolejo*, 139 F.3d at 531 (refusing to require a *de novo* resentencing hearing in which the district court could (re)consider every legal and factual ground for the sentence).

[27]  *United States v. Lee*, 358 F.3d 315, 320 (2004) ("The law of the case doctrine...is an exercise of judicial discretion which 'merely expresses the practice of courts generally to refuse to reopen what has been decided,' not a limit on judicial power.  The doctrine, therefore, 'is not inviolate,' but rather permits an appellate court or a district court on remand to deviate from a ruling made by a court of appeal in an earlier stage of the same case in certain exceptional circumstances" (internal citations omitted).).

[28]  *Matthews*, 312 F.3d at 657.  McCrimmon does not argue the first or third exception.  Regardless, the present case does not support the first exception and the ruling of *McCrimmon I* is not clearly erroneous since the *Blakely*-type issue was not before the court.

[29]  *McCrimmon*, 97 Fed. Appx. at 486.

the mandate rule. Though other circuits have a less restrictive rule, "'only those discrete, particular issues identified by the appeals court for remand are properly before the resentencing court'" in the Fifth Circuit.[30]

The second mandate rule exception, the only potentially applicable basis for relief, turns on the legal landscape at the time of the order. After *McCrimmon I*, upon resentencing, both *Blakely* and *Pineiro* had been decided, but *Booker* had not. The rulings of our Sister Circuits are instructive in this matter. Both the Tenth and Eighth Circuits have addressed whether *Blakely* claims exceed the scope of prior remand orders, and each circuit reached a different conclusion. The Tenth Circuit held a Sixth Amendment objection within the scope of remand, noting that the remand order was general and that *Blakely* presented an "exceptional circumstance" constituting "a dramatic change in the legal landscape...."[31] The Eighth Circuit, however, determined that a

---

[30] *Matthews*, 312 F.3d at 658 (quoting *Marmolejo*, 139 F.3d at 530). Moreover, nothing prohibited McCrimmon from raising the objection on direct appeal and adherence to the remand order itself did not create the constitutional error. *But cf. Lee*, 358 F.3d at 323-324 (allowing the government to raise its objection, textually outside the scope of the remand order, because the issue was at no time previously appealable).

[31] *United States v. Lang*, 405 F.3d 1060, 1064 (10th Cir. 2005) ("*Lang II*") ("Our mandate stated: 'Based on the foregoing, we REVERSE the district court's downward departures for both Langs, remanding both cases for resentencing pursuant to 18 U.S.C. § 3742(f)(2)(B), and AFFIRM....'"); *see also United States v. Puche*, 2005 U.S. App. LEXIS 25375, 11-13 (11th Cir. 2005) ( "This Court's limited mandate was clear and explicit -- the district court was directed to 'apply [] the three-level reduction under U.S.S.G. § 2X1.1 (b)(2) and then resentence within the resulting U.S.S.G. range.' In so directing, this Court necessarily concluded that the Sentencing Guidelines were to be applied in a mandatory fashion...Since this Court's limited mandate was issued, the Supreme

10

*Blakely* claim raised for the first time on appeal following resentencing was beyond the scope of the remand order and refused to entertain the objection.[32]

The Tenth Circuit's approach in *Lang II* is consistent with this Court's exception to the mandate rule enunciated in *Matthews II*, allowing issues to be considered when there is an intervening change in the law.[33] In *Matthews II*, we decided that the consideration of whether the necessary facts for a carjacking enhancement needed to be pleaded in the indictment and proven to a jury beyond a reasonable doubt was not beyond the scope of the mandate, due to a change in the law regarding statutory sentences wrought by *Apprendi v. New Jersey*.[34] However, *Matthews II* can be

---

Court decided *Blakely* and *Booker* -- controlling authority that requires a contrary conclusion. Consequently, the *Blakely*/*Booker* issue in this case falls within an exception to the mandate rule and the law-of-the-case doctrine" (internal citations omitted).).

[32] *United States v. Walterman*, 408 F.3d 1084, 1085 (8th Cir. 2005) (the remand order reads: "For the reasons stated herein, we affirm in part, reverse in part, and remand for resentencing without application of the career offender enhancement") (citing *U. S. v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001) (stating "[a] defendant does not receive a second chance to support an argument he failed to support in a first appeal simply because he is resentenced")); *see also United States v. Alaniz*, 413 F.3d 877 (8th Cir. 2005) (The remand order instructed the district court "to determine what sentence it would have imposed when originally sentencing Alaniz if it had been faced with the correct Guidelines imprisonment range of 210-262 months. If the district court determines that it would have imposed a sentence of less than 20 years in prison, the court is instructed to resentence Alaniz to that lesser prison term."), *cert. denied*, *Alaniz v. United States*, 126 S.Ct. 291 (2005).

[33] *Matthews*, 312 F.3d at 657.

[34] *Id*. at 663 (The mandate reads: "We vacate Matthews' sentence for carjacking and remand to the district court for re-sentencing consistent with *Jones* and the lower maximum imprisonment of § 2119(1)."); *See Apprendi*, 530 U.S. 466 (2000).

11

distinguished from both *Lang II* and the instant case because the defendant in *Matthews II* raised the enhancement objection on direct appeal.[35]  Thus, *Apprendi* directly repudiated *Matthews I*.[36]  The instant case can also be distinguished from both *Walterman*,[37] the Eighth Circuit case affirming the defendant's sentence, and *Mares*,[38] on which the government relies here, because McCrimmon did raise the *Blakely* objection at both sentencing hearings.[39]

Ultimately, we find that *Blakely* does not satisfy the requirements of the intervening law exception to the mandate rule as applied in this case because the constitutional argument existed, as applied in *Apprendi*[40] and as evidenced by McCrimmon's

---

[35]  *Matthews*, 312 F.3d at 657; *United States v. Lang*, 364 F.3d 1210, 1219-20 (10th Cir. 2004) ("*Lang I*"), *vacated*, *Lang v. United States*, 125 S.Ct. 986 (2005).

[36]  *Matthews*, 312 F.3d at 657.  No subsequent case overrules *McCrimmon I*. *Booker* extended the holding of *Blakely* to the federal sentencing guidelines, thus overruling *Pineiro I*—on which the district court relied.  Thus, subsequent caselaw invalidates the district court's rationale on remand—reasoning that should not have been relied upon, given the narrowly tailored remand order.

[37]  *Walterman*, 408 F.3d at 1085 ("Walterman did not advance such a claim before the district court during his first sentencing proceeding, in his first appeal, or in his second sentencing proceeding.").

[38]  *Mares*, 402 F.3d at 516 ("Mares did not object to his sentence on this basis in the district court and raises it for the first time on direct appeal.").

[39]  At the first sentencing hearing McCrimmon objected "to the additional quantities and the facts that—and the facts that those amounts—were not seized nor waived."  At the second sentencing hearing McCrimmon filed a written objection, citing *Blakely*.

[40]  Though not dispositive of the issue because the holding concerned state sentencing guidelines, *Apprendi* did provide the logical framework for a *Booker*-type objection on appeal, as to the federal sentencing guidelines.  *See* 530 U.S. 466.

objection at the first sentencing hearing directed precisely at that constitutional transgression. Yet also, *Blakely* was not controlling authority over the instant matter since it applies only to state sentencing guidelines.[41] Consequently, citing *Pineiro* at the suggestion of the prosecutor upon resentencing, the district court was without discretion to rule on the merits of McCrimmon's *Blakely* objection, as it was beyond the scope of our remand order.[42]

Finding that the mandate was limited and that no exception to the mandate rule then applied, a timely objection had to have been made on direct appeal in order for this Court to apply the requested *Booker* relief; harmless error review is inappropriate. We conclude that McCrimmon forfeited and could not timely revive his objection upon resentencing, in light of the narrow scope of our resultant mandate.[43]

---

[41] In two unpublished opinions from December 2004, this Court refused to reach *Blakely* arguments beyond the scope of their respective remand orders, never addressing the exceptions to the mandate rule. *United States v. Floyd*, 122 Fed. Appx. 98 (5th Cir. 2004), *cert. denied,* 541 U.S. 1054 (2004); *United States v. Taylor*, 117 Fed. Appx. 361 (5th Cir. 2004).

[42] "Whether the law of the case doctrine foreclosed the district court's exercise of discretion on remand and the interpretation of the scope of this court's remand order present questions of law that this court reviews de novo." *Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (citing *Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 332 (5th Cir. 2002)).

[43] *See United States v. Vanorden*, 414 F.3d 1321 (11th Cir. 2005) (per curiam), *cert. denied*, *Vanorden v. United States*, 126 S.Ct. 633 (2005) (discussing the difference between forfeiture and waiver in the *Booker* context; *see also United States v. Buonocore*, 416 F.3d 1124, 1133-1142 (10th Cir. 2005).

McCrimmon may possibly have waived his *Booker*-type objection,[44] for failure to raise it on direct appeal, despite having raised it at both sentencing hearings--thus distinguishing the instant case from *Walterman* and other Fifth Circuit cases.[45]  Since *Pineiro* had not yet been decided prior to *McCrimmon I*, it did not, therefore, constitute directly opposing precedent, rendering a *Booker*-type objection futile.[46]  Moreover, McCrimmon recognized the potential merit of the argument by objecting to the unproven quantity of narcotics at the first sentencing hearing.[47]  McCrimmon proffers no viable explanation or extraordinary circumstance for failing to raise the *Blakely*-type objection on the first appeal to this Court. We do not, however, decide whether waiver or plain-error review applies to the alleged constitutional violation because the

---

[44]  Procedural default rules are not trumped by the retroactivity of later decided cases.  *See Martinez v. Tex. Dep't of Crim. Justice*, 300 F.3d 567 (5th Cir. 2002); *see also United States v. Ardley*, 273 F.3d 991 (11th Cir. 2001) (en banc) (holding that even a remand by the Supreme Court for reconsideration in light of an intervening [Supreme] Court opinion does not require the court to consider an argument raised for the first time in a petition for [writ] of certiorari), *cited in*, *United States v. Taylor*, 409 F.3d 675, 676 (5th Cir. 2005) (per curiam).

[45]  *See United States v. Higginbotham*, 137 Fed. Appx. 665, 666 (5th Cir. 2005) (per curiam) (stating that defendant abandoned his Booker argument, raised for the first time in a petition for writ of certiorari; *see United States v. Hernandez-Gonzalez*, 405 F.3d 260 (5th Cir. 2005) (per curiam) (stating "[a]bsent extraordinary circumstances, this court will not consider [*Booker*] issues raised for the first time in a petition for rehearing").

[46]  "Because any objection...would have been overruled based on existing precedent, such an objection would have been futile.  'This Court has made clear that counsel is not required to make futile motions or objections." *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002)  (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

[47]  *But cf. United States v. Hass*, 199, F.3d 749, 753 (5th Cir. 1999) ("An issue is not waived if there was no reason to raise it in the initial appeal.").

14

distinction is not outcome determinative.

                                IV

     Assuming, in favor of McCrimmon, that waiver does not apply,
he cannot, in any event, establish plain error.  McCrimmon can
satisfy the first two elements of the plain-error analysis.  The
Supreme Court has determined that "[a]ny fact (other than a prior
conviction) which is necessary to support a sentence exceeding the
maximum authorized by the facts established by a plea of guilty or
a jury verdict must be admitted by the defendant or proved to the
jury beyond a reasonable doubt."[48]  Consequently, the evidence
relied upon by the district court at the sentencing hearings, then
confined by the mandatory guideline regime, constitutes a violation
of McCrimmon's constitutional rights.

     The conspiracy count of McCrimmon's indictment did not contain
an amount of cocaine base.  McCrimmon's plea agreement did not
indicate any particular amount of cocaine base, and, in fact,
acknowledged that McCrimmon pled guilty pursuant to 21 U.S.C. §
841(b)(1)(C)--applicable to amounts of cocaine base less than five
grams and imposing a term of imprisonment of no more than 20 years.
During the recitation of the factual basis for the plea, to which
McCrimmon acquiesced, the prosecutor stated that McCrimmon had
provided  287.3  grams  of  cocaine  base  to  the  Government's

---

     [48]  *Booker*, 125 S.Ct. 738 (2005).

                               15

confidential informant.  The amount of cocaine used to calculate McCrimmon's sentence, more than 2,400 grams, was neither proved by admission nor found beyond a reasonable doubt by a jury. Therefore, McCrimmon's 168-month mandatory guideline sentence, based on an unproven quantity of drugs, violates the Sixth Amendment and constitutes error that is clear or obvious.[49]

However, McCrimmon fails to satisfy the third element of the plain error inquiry.  "The standard for determining whether an error affects substantial rights...requires a showing that the error "'must have affected the outcome of the district court proceedings.'"[50]  "To meet this standard the proponent of the error must demonstrate a probability 'sufficient to undermine confidence in the outcome.'"[51]

An amount of cocaine base of at least 150 grams but less than 500 grams--inclusive of 287.3 grams--results in an offense level of 34.[52]  Subtracting the three levels for acceptance of responsibility, the total offense level is 31, for which the sentencing range is 108-135 months of imprisonment.  Even though, McCrimmon's guideline range would be significantly reduced--even

---

[49]  *See Booker*, 125 S. Ct. at 756.

[50]  *Mares*, 402 F.3d at 521 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

[51]  *Id*. (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

[52]  U.S.S.G. § 2D1.1(c)(3).

the maximum sentence of 135 months would be significantly less than the 168 months to which McCrimmon was sentenced--neither the sentencing transcripts nor evidence adduced at oral argument indicates that the district court would have sentenced McCrimmon to less than the 168 months of imprisonment, had it not been curtailed by the applicable guideline range for the sentence.[53] McCrimmon, therefore, cannot demonstrate prejudice--that his sentence would have been any different or that the Sixth Amendment violation necessarily contributed to the sentence.

AFFIRMED.

---

[53] "'...if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses.'" *Mares*, 402 F.3d at 521 (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005)).